IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GLOBAL GROUND SUPPORT, LLC    :                    CIVIL ACTION
                                           :
                v.                    :
                                         :
GLAZER ENTERPRISES, INC. t/a      :                 NO. 05-4373
ELLIOTT EQUIPMENT CO.          :
                                         :
                v.                    :
                                         :
BAKER & ASSOCIATES, INC.         :

O'NEILL, J.                                        SEPTEMBER 29, 2008

<u>MEMORANDUM</u>

Plaintiff, Global Ground Support, LLC, filed a praecipe to issue a writ of summons on June 15, 2005 in the Court of Common Pleas for Philadelphia County. Plaintiff subsequently filed a complaint on August 3, 2005 against defendant, Elliott Equipment Co. (alleged to be designated incorrectly as "Glazer Enterprises, Inc., trading as Elliott Equipment Co."). Defendant removed this case to this Court on August 16, 2005, pursuant to 28 U.S.C. §§ 1441 & 1446, asserting diversity jurisdiction, 28 U.S.C. § 1332. Defendant previously filed a motion to dismiss or, in the alternative, motion for summary judgment, which I considered as defendant's first motion for summary judgment.

In my January 23, 2008 opinion I denied defendant's motion for summary judgment with respect to plaintiff's claim that defendant breached its contract with plaintiff by failing to provide deicing equipment that was designed and/or manufactured to withstand the normal stresses borne by such equipment and manufactured in accordance with the contractual specifications. I also denied defendant's motion for summary judgment with respect to plaintiff's claim that defendant

breached a five-year express warranty on the deicing equipment and to plaintiff's products

liability claim.  I granted defendant's motion for summary judgment with respect to plaintiff's

claims that defendant failed to name plaintiff as an insured in its insurance policy as required by

contract and breached an implied warranty of merchantability and fitness for a particular purpose.

I also granted defendant's motion for summary judgment with respect to plaintiff's claim for

contribution and indemnity from defendant for any successful claims against it by Robert

Emerson and US Airways.  I found the contract subject to interpretation under the law of North

Carolina.  I also found North Carolina's Uniform Commercial Code applies because the contract

involves a sale of goods.

Before me now is another motion for summary judgment from defendant, and plaintiff's

response, defendant's reply, plaintiff's surreply, and third-party defendant Baker & Associates,

Inc.'s response.

BACKGROUND

In January 2001, various entities, including Global and Elliott, entered into contracts for

the installation of twelve boom assemblies and associated deicing equipment at the Philadelphia

International Airport.  On January 23, 2001, Global entered into a purchase order agreement with

Elliott to purchase fixed base pedestals and boom assemblies which could extend towards

various aircraft during deicing activities.  Under the contract, Elliott agreed to design and

manufacture the pedestals and boom assemblies according to specifications provided by the

airport and applicable industry standards.  The general contractor of this project, Fluidics, Inc.,

purchased the deicing equipment from Global and, in turn, the City of Philadelphia purchased the

equipment from Fluidics.  Fluidics installed the pedestals and boom assemblies and they were

2

operational as of December 2002.  The City of Philadelphia accepted the equipment in April 2003.

On February 28, 2005, Robert Emerson, an employee at US Airways, allegedly fell to the ground and sustained personal injuries when one of the boom assemblies collapsed as he was operating one of deicing units on a US Airways Airbus 330.  Specifically, the boom sustained a structural failure and collapsed, causing the enclosed cab, containing Emerson, to fall to the ground.  Following this incident, the City of Philadelphia and the airport required the repair or replacement of the damaged deicing boom and the remaining deicing equipment be recertified and repaired.  Global covered the expense of these remediation efforts.  Emerson commenced an action in the Court of Common Pleas for Philadelphia County against Global and other entities, including Elliott, alleging that these entities were responsible for his injuries.  Emerson's action has been resolved.  Additionally, when the boom collapsed, it fell onto the aircraft allegedly causing approximately three million dollars worth of damage to the aircraft.  US Airways commenced an action against Global, Elliott and Fluidics for this damage in this Court.  US Airways' action was consolidated with this action as both arise from the February 25, 2008 incident.

### STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party moving for summary judgment has the burden of demonstrating that there are no genuine issues of material fact. Id. at 322-23. If the moving party sustains the burden, the nonmoving party must set forth facts demonstrating the existence of a genuine issue for trial. See Anderson, 477 U.S. at 255. Rule 56(e) provides that when a properly supported motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The adverse party therefore must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion, and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). However, the "existence of disputed issues of material fact should be ascertained by resolving 'all inferences, doubts and issues of credibility against'" the moving party. Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978), quoting Smith v. Pittsburgh Gage & Supply Co., 464 F.2d 870, 878 (3d Cir. 1972).

DISCUSSION

Global asserts that Elliott should be responsible for the recertification and repair of the deicing equipment that Global was required to undertake by the City of Philadelphia and any damages that Global may have sustained as a result of the incident. Elliott did not recertify or

4

repair the equipment or reimburse Global for its losses.  Elliott alleges it is not liable to Global

under Global's breach of contract, breach of express warranty or product liability claims.

I.      Breach of Contract

A.      Design and Manufacture of Equipment

Global asserts Elliott breached its contract with Global by failing to provide deicing

equipment that was designed and/or manufactured to withstand the normal stresses borne by such

equipment and that was manufactured in accordance with the contractual specifications.  Elliott

claims Global's breach of contract claim is precluded because Global failed to satisfy the

requirements under North Carolina's UCC permitting a buyer to revoke goods after they have

been accepted.[1]  Specifically, Elliott alleges (1) Global has not provided evidence the goods were

non-conforming, (2) Global made modifications to the goods after acceptance, (3) Global did not

timely revoke the goods, (4) Global did not properly notify Elliott of revocation and (5) Global

does not own the goods so revocation is not permitted.

North Carolina's UCC provides that a "buyer may revoke his acceptance of a lot or

commercial unit whose nonconformity substantially impairs its value to him if he has accepted

---

[1]  It is undisputed that Global accepted the goods and failed to reject them prior to acceptance.  Because Global accepted the goods, its breach of contract claim survives only if it justifiably revoked its acceptance of the goods.  See Harrington Mfg. Co., Inc. v. Logan Tontz Co., 253 S.E.2d 282, 285-86 (N.C. Ct. App. 1979), noting that once goods are accepted a buyer is precluded from rejecting them and may only revoke acceptance if justified.  Thus, Elliott's allegations seeking to preclude Global's breach of contract claims on this basis Global accepted the goods and initially failed to reject them are moot.  However, the arguments Elliott raises in these allegations have applicability to whether Global's revocation was justified and therefore will be discussed below.  For example, Elliott's allegations with regard to Global's failure to inspect the goods which deprived Elliott of an opportunity to cure the breach and minimize damages will be addressed in the revocation context.  Similarly, I will address Elliott's allegations that Global and others were responsible for inspecting the goods, inspected them, found the goods passed inspection, and used the goods for two years in the revocation discussion.

5

it . . . without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances." N.C. Gen. Stat. § 25-2-608(1)(b). "Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects." § 25-2-608(3). Revocation is "not effective until the buyer notifies the seller of it." Id.

First, Elliott alleges Global's breach of contract claim is precluded because Global's alleged revocation fails to satisfy the requirement that the goods have a nonconformity which substantially impairs its value to the buyer. Goods "conform to the contract when they are in accordance with the obligations under the contract." Harrington, 253 S.E.2d at 286.[2] Elliott argues Global provided no evidence the goods were nonconforming. Moreover, Elliott claims Global cannot prove a nonconformity because Global controlled the design and the goods Elliott provided met the specifications of the design. While Elliott's experts may opine Elliott's goods met the specifications, other expert reports, such as Herman F. Nied and Charles M. Recard, opine that defects in the welds of Unit 3B and the welds' failure to meet specified drawings caused the structural failure. To refute the factual dispute raised by these disclosures, Elliott presents expert reports with contrary views as to the cause of structural failure. The conflicting expert reports create a genuine issue of material fact with regard to whether the goods were nonconforming. I.B.E.W. Local Union 380 Pension Fund v. Buck Consultants, 2008 WL 269476, at *6 (E.D. Pa.

---

[2] Elliott claims this case discusses Georgia's enactment of the UCC and not North Carolina's. It appears Elliott's brief drafter misunderstood the case's reference to the provisions of the General Statutes of North Carolina with the phrase "G.S." to mean Georgia's Statutes. See Harrington, 253 S.E.2d at 283-88.

Jan. 30, 2008), <u>citing</u> <u>Hill v. Lamanna</u>, 2007 WL 777007, at *12 (W.D. Pa. Mar. 12, 2007),

holding conflicting expert reports create a genuine issue of material fact thereby precluding

summary judgment.

Second, Elliott alleges Global did not revoke acceptance before modifications were made

to the goods.  Revocation must occur before any substantial change in condition of the goods

takes place unless caused by the alleged defects.  N.C. Gen. Stat. § 25-2-608(2).  This provision

protects sellers in situations where buyers allow the goods to deteriorate, creating the risk that the

alleged defect was caused or aggravated by the buyers' action or inaction.  <u>Roy Burt Enter., Inc. v.</u>

<u>Marsh</u>, 400 S.E.2d 425, 427 (N.C. 1991).  However, this provision does not preclude revocation

of goods that are defective before change occurs.  <u>Warren v. Guttanit, Inc.</u>, 317 S.E.2d 5, 10-11

(N.C. Ct. App. 1984).  Elliott claims the eventual failure of the booms is from the modification of

the goods after delivery through the abuse and misuse by Global and US Airways' personnel, and

a change in the design of the other components of the deicers without informing Elliott.  Although

expert reports exist to support Elliott's allegations, expert reports also exist discussing Elliott's

defective product at the time of delivery such as the reports of Charles M. Recard, Herman F.

Nied and Craig D. Clauser.  Therefore, Elliott's allegations do not preclude Global's claim; the

conflicting expert reports demonstrate a genuine issue of material fact for the jury.  <u>I.B.E.W.</u>,

2008 WL 269476, at *6.

Third, Elliott alleges Global did not properly revoke its acceptance of the goods because

Global should have discovered the alleged nonconformity at an earlier time.  "[W]hether a buyer

revoked acceptance within a reasonable time is normally a question of fact for the jury [unless] the

facts are undisputed and only one inference can be drawn therefrom . . . ."  <u>Bus. Commc'n, Inc. v.</u>

KI Networks, Inc., 580 S.E.2d 77, 79 (N.C. Ct. App. 2003).  Surrounding circumstances may be considered in determining if revocation occurred within a reasonable time "including the nature of the defect, the complexity of the goods involved, the sophistication of the buyer, and the difficulty of its discovery."  Harrington Mfg., 253 S.E.2d at 286.   "The reasonable time period may extend in certain cases beyond the time in which notice of the nonconformity has been given, as for example where the parties make attempts at adjustment."  Bus. Commc'n, Inc., 580 S.E.2d at 79; see also Harrington Mfg., 253 S.E.2d at 286.

Elliott alleges Global had three occasions between the time the goods were accepted in 2001 and the February 2005 accident to realize something was wrong and revoke acceptance. Elliott claims that an inspection should have revealed a defect if conducted at the time of delivery, when the goods were installed by Fluidics and when repairs were made to the boom in 2004. Elliott also alleges Global and others were responsible for conducting inspections, the inspections were conducted, the goods passed inspection and the goods were used for two years without problem.  Elliott alleges the failure to inspect or, alternatively, the poorly conducted inspections deprived it of the opportunity to cure the alleged breach and minimize its damages.  Global responds that it did not find the nonconformity sooner despite inspections because the latent defects in the boom were difficult to discover and it reasonably relied on Elliott's expertise. Expert reports such as those of Herman F. Nied and Craig D. Clauser, and the Preferred Supplier Agreement and Purchase Order provide sufficient evidence of Global's claims to preclude summary judgment.  Viewing the facts in the light most favorable to Global, the jury could find Global's discovery of the defect and revocation occurred within a reasonable time and even if the defect should have been discovered at the time of the 2004 repairs, these repairs extended, rather

8

than restricted, the reasonable time for revocation.  See Bus. Commc'n, Inc., 580 S.E.2d at 79, noting reasonable time period may extend if parties make attempts at adjustment.

Additionally in contesting Global's failure to timely discover the defects, Elliott alleges Global failed to perform any diagnostic testing at the time of acceptance including ultrasonic testing, magnetic particle testing, or acoustic emission testing.  However, Elliott has not presented any evidence to support the assertion that such testing would have discovered the nonconformity and that Global should have performed such testing during the inspection.  While Elliott also cites cases to support its allegation that Global's revocation was untimely, the cases are distinguishable factually from this case.  Genuine issues of material fact exist as to whether Global's revocation occurred within a reasonable time, so a grant of summary judgment is not appropriate.

Fourth, Elliott alleges the revocation was improper due to Global's failure to properly notify Elliott of its revocation.  Under North Carolina law, "[f]ormal notice that acceptance is being revoked is not necessary."  Roy Burt Enterprises, Inc. v. Marsh, 400 S.E.2d 425, 427 (N.C. 1991).  "Any conduct by the buyer manifesting to the seller the buyer's dissatisfaction with the goods and his expectation of redress is sufficient."  Id.  Global presented evidence demonstrating that it gave Elliott reasonable notice.  A May 4, 2005 letter to James Glazer, President of Elliott, discussed issues arising from the deicing boom's failure and requesting Elliott take responsibility for addressing the issues under the warranty.  The issue of whether this letter constitutes reasonable notice will be a factual issue for the jury.

Finally, Elliott argues Global's breach of contract claim is precluded because Global no longer owned the goods at the time of the alleged revocation.  Elliott provides no law to support its argument that a former buyer of the goods must still own the goods at the time of revocation.

9

The language of § 25-2-608 of North Carolina's UCC provides that a "buyer" may revoke acceptance.  Under North Carolina's UCC, a "buyer" is defined as a "person who buys or contracts to buy goods."  Elliott has not contested Global's status as a buyer.  Allowing a buyer to revoke acceptance regardless of ownership is particularly persuasive when a buyer covers the expense of repairs as a result of the alleged nonconformity that prompted revocation.  Global's claim is not precluded.

B.    Breach of Express Warranty

Global asserts Elliott breached a five-year express warranty on the deicing equipment.  As argued in its previous motion, Elliott again argues the contract only provides for a twelve-month warranty of the deicing equipment, which expired on September 1, 2002.  Elliott argues Global has not offered evidence that the express warranty extended beyond one year and that the Parol Evidence Rule and the Statute of Frauds bar consideration of any extrinsic evidence of a longer warranty.

The UCC, as adopted by North Carolina law, provides that express warranties by the seller may be created in one of three ways:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

N.C. Gen. Stat. Ann. § 25-2-313(1); Sharrard, McGee & Co., P.A. v. Suz's Software, Inc., 396 S.E.2d 815, 818 (N.C. Ct. App. 1990).

In my January 23, 2006 opinion I held that the warranty language at issue in the Purchase Order Terms and Conditions is ambiguous and that there are genuine issues of material fact concerning whether Elliott warranted the goods for five years, whether Global was an Elliott-approved distributor, and whether the five-year warranty applies to the allegedly defective parts of the deicing equipment.

Elliott reasserts its arguments with regards to the warranty's ambiguity.  The warranty language in the contract has not changed.  In section "7. Warranty" of the Purchase Order Terms and Conditions Elliott specifically warranted:

> each Item, parts thereof, spare parts and repaired or replacement parts manufactured or modified to Seller's [Elliott's]detailed design and specifications, be free from defects in material, workmanship, process of manufacture and design and be suitable for the intended purpose.

However, in paragraph 7.2, Elliott "agree[d] that its warranty, with respect to defects in material, workmanship, process of manufacture and design shall extend as outlined and will be warranted for a period of not less than 12 months."  The language also stated "seller will identify any additional warranty offered at no cost and or extended price schedule."  Elliott again cites paragraph 15.1 of the contract, which states:

> It is accepted that this Agreement, with the respected Annex(es) attached hereto embodies the entire agreement of the parties hereto with regard to the matters dealt with herein and that no misunderstandings or agreements written or otherwise exist between the parties, except as herein expressly set out.

Paragraph 15.2 further states that "[n]o change or modification to this Agreement, or Annex(es) shall be valid unless in writing and signed on behalf of each party hereto by their duly authorized representatives."  Elliott again argues these provisions suggest a five-year warranty did not exist because if one were desired it had to have been negotiated by the parties.

11

Global again relies on a separate warranty that Elliott does not dispute provides a five-year warranty.[3]  Elliott however argues this warranty does not apply to the deicing systems at issue. The submissions of Global and Elliott on this issue demonstrate the existence of a genuine issue of material fact.  Global provides support that this warranty covers the deicing systems at issue through deposition testimony and other documents.  If these facts are viewed in the light most favorable to nonmoving party Global, a reasonable juror could find in Global's favor on this claim.

Elliott also fails to present facts to cause reconsideration of my January 23, 2006 opinion that a genuine issue of material fact exists with regards to whether Global was an Elliott-approved distributor under the alleged warranty.  The alleged five-year warranty only applies if an Elliott-

---

[3]  The warranty states in relevant part:

Elliott Equipment Company hereby warrants all equipment manufactured by Elliott Equipment Company to be free from defects in material and workmanship at the time of shipment from the Elliott Equipment Company plant.  Elliott Equipment Company will replace at its plant, any equipment which shall, within TWELVE (12) MONTHS after delivery to the original customer from Elliott Equipment Company, be returned to Elliott Equipment Company's plant and be found by Elliott Equipment Company to have been defective at the time of original shipment from Elliott Equipment Company.

*       *       *

The following structural components have a FIVE (5) YEAR parts only warranty after date of shipment from Elliott Equipment Company: Subframe, Turret and Structural Components of all steel booms.  The FIVE (5) YEAR warranty requires an annual service inspection by an Elliott Equipment Company distributor and all replacement parts to be original equipment parts from Elliott Equipment Company.  The above listed components shall have a three (3) year parts only warranty if the annual service inspection is performed by an approved entity other than an authorized Elliott Equipment Company distributor.  All replacement parts are to be original equipment parts from Elliott Equipment Company.  (Warranty specifically excludes seals, gaskets, hydraulic components and exterior coatings.)

approved distributor conducts an annual service inspection and a three-year parts-only warranty applies if the annual service inspection is performed by an approved entity other than an authorized Elliott distributor.  Global provides sufficient evidence with the Preferred Supplier Agreement, Distribution Agreement and Jim Glazer's testimony for a reasonable jury to return a verdict on its behalf with regard to its status as an Elliott-approved distributor.  Elliott again argues the Preferred Supplier Agreement designates Elliott as the preferred supplier of Global, not a designated distributor.  I found a genuine issue of material fact existed with regard to whether Global was an Elliott-approved distributor and Elliott fails to convince me to reconsider this decision.  Furthermore, despite Elliott's allegations that no inspections were completed, Elliott's own expert reports document inspections occurring.

Elliott fails to present any evidence to convince me to reconsider my January 23, 2006 decision with regards to the ambiguity of the warranty.  Global Ground Support, LLC v. Glazer Enterprises, Inc. t/a Elliott Equip. Co., No. 05-4373 (E.D. Pa. Jan. 23, 2006) citing Cleland v. Children's Home, Inc., 306 S.E.2d 587, 589 (N.C. Ct. App. 1983), holding "[i]f an agreement is ambiguous, on the other hand, and the intention of the parties unclear, interpretation of the contract is for the jury."  Elliott's arguments disputing the extrinsic evidence presented by Global to support the existence of a five-year warranty reinforces the existence of genuine issues of material fact; the arguments do not support summary judgment.  Elliott argues that because the "contract does not contain any other provision that extends the warranty beyond twelve months . . . . the plain language of the . . . contract makes . . . the warranty period [] twelve months."  Elliott has provided no evidence to support the claim that the contract is plain and unambiguous.  Elliott merely presents extrinsic evidence to possibly contradict Global's extrinsic evidence.

Elliott argues that I should reconsider my prior decision based on the fundamental rule of contract interpretation that a written contract is construed against the party who drafted it. While North Carolina requires ambiguities be construed against the party who drafted the contract, this should only be done as a tie-breaker if an ambiguity remains after all evidence has been weighed. Fed. Realty Investment Trust v. Belk-Tyler of Elizabeth City, Inc., 289 S.E.2d 145, 148 (N.C. Ct. App. 1982). Factual disputes prevent my resolution of the ambiguity on the record. See id.

Elliott also argues that I should find the warranty period extends for only one year because it is a "reasonable" period of time in light of the circumstances. Elliott cites Restatement 2d of Contracts § 204 which states "when the parties . . . have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court." Elliott also cites the UCC, which states "[t]he time    for . . . any other action under a contract if not provided in this article or agreed upon shall be a reasonable time." N.C. Gen. Stat. § 25-2-309(1). The maximum length of the warranty alleged is five years, a not unreasonable time. Elliott's allegation that I should determine the reasonable time rests upon the assumption that no evidence exists to support any warranty greater than one year. As stated above, I again find a factual dispute exists as to the length of the warranty.

Additionally, Elliott's argument that the parol evidence rule bars extrinsic evidence to determine the length of the warranty fails. "The parol evidence rule prohibits the admission of parol evidence to vary, add to, or contradict a written instrument intended to be the final integration of the transaction." Mayo v. N.C. State Univ., 608 S.E.2d 116, 121 (N.C. Ct. App. 2005). However, "when a contract is ambiguous, parol evidence is admissible to show and make certain the intention behind the contract." Id. The parol evidence rule does not apply because I

14

find the warranty language ambiguous and extrinsic evidence will clarify instead of vary, add to or contradict the ambiguous warranty language.  See id.  As previously discussed in my January 23, 2006 opinion, such ambiguity allows a review of Global's parol evidence and precludes summary judgment on this claim.

Elliott's Statute of Frauds argument similarly fails.  Elliott alleges any modification of the warranty for the deicer equipment had to be in writing to satisfy the Statute of Frauds.  Elliott cites North Carolina's UCC, which states in relevant part that "a signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded . . . ."  N.C. Gen. Stat. § 25-2-209(2).  I need not determine whether a modification of the warranty falls under the Statute of Frauds because a factual dispute exists as to whether the warranty extended beyond one year.  Elliott's argument that a modification occurred does not eliminate the ambiguity found in the original warranty.

Elliott also alleges its course of conduct with Global demonstrates Elliott did not waive a one-year warranty period and that it was mutually understood that Elliott was only providing a twelve-month warranty.  Elliott cites law for the proposition that a "modification of a sales contract may be established by a course of conduct" and can "show a waive or modification of any term inconsistent with such course of performance."  Similarly to Elliott's Statute of Fraud argument, this argument addresses a modification of a sales contract and not the initial ambiguity I find exists in the warranty language.  Moreover, the course of conduct Elliott alleges supports that it did not waive the one-year warranty is extrinsic evidence contrary to Global's extrinsic evidence.  A genuine issue of material fact still exists.

15

Finally, Elliott argues that even if the alleged warranty applies Global's remedies are limited.  North Carolina's UCC states "[r]emedies for breach of warranty can be limited in accordance with the provisions of this article on liquidation or limitation of damages and on contractual modification of remedy."  N.C. Gen. Stat. § 25-2-316.  The Code also provides "the agreement . . . may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts . . . ."  N.C. Gen. Stat. § 25-2-719(1)(a). Consequential damages may also be "limited or excluded unless the limitation or exclusion is unconscionable."  N.C. Gen. Stat. § 25-2-719(3).  Remedies provided in an agreement are "optional unless expressly agreed to be exclusive, in which case it is the sole remedy."  N.C. Gen. Stat. § 25-2-719(1)(b).  However, if "circumstances cause an exclusive or limited remedy to fail of its essential purpose," the applicable remedies under the UCC may be provided.  N.C. Gen. Stat. § 25-2-719(2).  Elliott claims the following language limits the remedies available under the alleged warranty:

> LIMITATION OF LIABILITY: Elliott Equipment Company's liability for any losses and damages resulting from any cause whatsoever, including without limitation Elliott Equipment Company's negligence or from damaged or defective equipment, irrespective of whether such defects are discoverable or latent, shall in no event exceed the purchase price of this particular equipment to which losses or damages are claimed, or at the election of Elliott Equipment Company, the repair or replacement of the defective or damaged equipment.
>
> In no event shall Elliott Equipment Company be liable for special, incidental consequential damages including without limitation commercial losses or costs of any kind for any damages for which buyer may be liable to other persons.

As permitted under North Carolina's UCC, this language limits the remedies available to the purchase price of the equipment or at Elliott's election the repair or replacement of the alleged

defective equipment.  See N.C. Gen. Stat. § 25-2-719(1)(a), permitting such remedies.  The language stating the remedies "shall in no event exceed" the limitations expresses the exclusivity of the remedies provided; the warranty also precludes liability for special, incidental consequential damages as the UCC permits.  See N.C. Gen. Stat. § 25-2-719(1)(b), (3).

Following the February 2008 accident, Global requested that Elliott participate in the remediation efforts of the defective boom and the remaining booms found to be defective during recertification.  Elliott did not participate in the repairs.  Global pursued this action to seek reimbursement for the repairs Global made to Elliott's equipment.  Therefore, if the warranty applies, Global's reimbursement for its remediation efforts is limited to the purchase price of Elliott's defective equipment because repairs were already made to the equipment.

Elliott also alleges the following warranty language limits Global's remedies:

> In the event of a breach of warranty in Clause 5.1 , [Elliott] shall repair or replace the defective item, or credit the purchase price of such item to [Global's] account at [Global's] election provided [Global] shows to [Elliott's] reasonable satisfaction that the item in question is defective, and provided further that written notice of defect shall have been given by [Global] to [Elliott] within sixty (60) days of such defect becoming known to [Global].

Elliott alleges Global did not follow the notice provisions required to recover the remedies, and even if they had been followed the remedies are limited by the warranty.  First, as discussed above a factual dispute exists regarding whether notice was provided by Global and whether it was reasonable.  Second, no language in this warranty provision supports the limitation Elliott alleges exists for remedies.  Instead, this provision merely states Elliott will not repair or replace the defective item unless certain requirements are met.  Under North Carolina's UCC the remedy is

17

optional unless it is expressly agreed to be exclusive and no exclusivity language exists in this provision.  See N.C. Gen. Stat. § 25-2-719(1)(b).

II.    Products Liability

Global asserts that Elliott failed to design the deicing equipment to withstand the stresses associated with normal usage, to manufacture the equipment in accordance with specifications outlined in Global's purchase order, to manufacture the boom with the proper welds for such equipment and to apply the welds so air voids did not remain inside to weaken the welds.

North Carolina's product liability law provides that one may institute a claim for products liability if he or she has suffered "personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling of any product."  N.C. Gen. Stat. Ann. § 99B-1(3); see also Moore v. Coachmen Indus., Inc., 499 S.E.2d 772, 777 (N.C. Ct. App. 1998).  "A products liability plaintiff may base the claim on various causes of action, including negligence (negligent design, manufacture, assembly, or failure to provide adequate warnings) and breach of warranty."  Moore, 499 S.E.2d at 777.  North Carolina courts have not adopted the doctrine of strict liability in products liability actions.  Fowler v. Gen. Elec. Co., 252 S.E.2d 862, 845 (N.C. Ct. App. 1979).  As discussed in my January 23, 2006 opinion, Global appears to assert a products liability claim under a theory of negligence.  Elliott argues that Global's products liability claim is barred by North Carolina's economic loss rule because Global alleges only economic losses.

North Carolina's economic loss rule "prohibits recovery for economic loss in tort."  Moore, 449 S.E.2d at 780.  Such claims are instead governed by contract law, including the UCC.

18

Id.  The economic loss rule's rational is that the "sale of goods is accomplished by contract and the parties are free to include, or exclude, provisions [regarding] rights and remedies, should the product prove [] defective."  Id.  To allow remedy in tort where the defect in the product damages the actual product would negate the rights and remedies in the contract.  Id.  North Carolina's economic loss rule does not apply to limit tort actions arising in the absence of a contract.  Lord v. Customized Consulting Specialty, Inc., 643 S.E.2d 28, 32 (N.C. Ct. App. 2007), citing Ellis-Don Constr., Inc. v. HKS, Inc., 353 F. Supp.2d 603, 606 (M.D. N.C. 2004).

Economic losses include damages to the product itself.  Moore, 449 S.E.2d at 780. However, a negligence action may be maintained where a defective product causes personal injury or other property damage.  Id.; see also Alexander v. Daimlerchrysler Corp., 2004 WL 179369, at *12 (N.C. Super. Ct. Jan. 30, 2004).  "When a component part of a product or a system injures the rest of the product or the system, only economic loss has occurred" and the rest of the product or the system is not considered other property.  See Atl. Coast Mechanical, Inc. v. Arcadis, Geraghty & Miller of N.C., Inc., 623 S.E.2d 334, 339-40 (N.C. Ct. App. 2006), finding plant suffered only economic loss to generators and electronic equipment when allegedly defective generators were component part of system; Wilson v. Dryvit Systems, Inc., 206 F. Supp.2d 749, 753 (E.D. N.C. 2002), finding economic loss rule barred claims because system applied to the house caused other portions of the house to be considered to be not other property; Moore v. Coachmen Indus., Inc., 499 S.E.2d 772, 780 (N.C. Ct. App. 1998), finding all fire damage to vehicle caused by a component part was economic loss; Gregory v. Atrium Door and Window Co., 415 S.E.2d 574 (N.C. Ct. App. 1992), finding water damage to flooring caused by allegedly defective doors was economic loss.

Global is seeking exclusively economic recovery for the "extensive and costly remediation efforts" to the goods it purchased under its contract with Elliott.  The remediation efforts included the entire boom but the goods are considered part of the boom under North Carolina law and therefore not other property.  Furthermore, as I previously held in my January 23, 2006 opinion, it is premature for Global to assert that Elliott is responsible for any claims against it from Robert Emerson for his alleged physical injury or US Airways for the alleged property damage to its plane.  Global's claims and damages arise from reimbursement claims for remediation efforts it made to the booms in response to damages caused by Elliott's alleged defective product.  Although the remediation efforts were initiated after an incident involving only one of the booms, the efforts still involved fixing the other booms which included the welds under contract.  Global's product liability claim arises from the same facts and injuries as its claims for breach of contract.  Thus, Global's failure to allege damage to other property or personal injury precludes its product liability claim under the economic loss rule.  Elliott's motion for summary judgment on this claim will be granted.[4]

An appropriate Order follows.

---

[4] Elliott also claims Global's product liability claim is barred because Global lacks standing because Global is not the owner or intended user of the product, Global's action is a breach of contract and breach of warranty action under the Gist of the Action Doctrine and the product met Global's specifications.  I will not address these arguments because I find the economic loss rule bars Global's product liability claim.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GLOBAL GROUND SUPPORT, LLC | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GLAZER ENTERPRISES, INC. t/a | : | NO. 05-4373 |
| ELLIOTT EQUIPMENT CO. | : | |

<u>ORDER</u>

AND NOW, this 29th day of September 2008, upon consideration of defendant's motion to dismiss or, in the alternative, motion for summary judgment, plaintiff's response, defendant's reply, plaintiff's surreply, and defendant's supplemental reply, and for the reasons set forth in the accompanying memorandum, it is ORDERED as follows:

1.    Defendant's motion for summary judgment with respect to plaintiff's breach of contract claim is DENIED;

2.    Defendant's motion for summary judgment with respect to plaintiff's claim that defendant breached an express warranty on the deicing equipment is DENIED;

3.    Defendant's motion for summary judgment with respect to plaintiff's products liability claim is GRANTED and judgment is entered in favor of defendant, Glazer Enterprises, Inc. t/a Elliott Equipment Co., and against plaintiff, Global Ground Support, LLC, with respect to this claim.


/s/ THOMAS N. O'NEILL, JR.
THOMAS N. O'NEILL, JR., J.